UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY DARVILLE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 11-10599-DJC |
| | ) |
| THE CHILDREN'S HOSPITAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                August 14, 2013

### I.   Introduction

Plaintiff Barry Darville ("Darville") has sued his former employer, Defendant The Children's Hospital Corporation ("Hospital") for allegedly interfering with Darville's rights under 29 U.S.C. § 2612, the Family Medical Leave Act ("FMLA"). The Hospital has moved for summary judgment. D. 27. For the reasons given below, the Court GRANTS the Hospital's motion.

### II.  Background

Except where noted, the following facts are not in dispute.[1] The Hospital hired Darville as a full-time employee working as a "Materials Handler" in January of 2007. Def. SOF, D. 29 ¶ 1; Pl. Opp., D. 30 at 1. As part of his training, Darville received instruction on the Hospital's

---

[1] The Hospital filed its motion for summary judgment with a supporting statement of material facts ("Def. SOF"). D. 27-29. Darville filed an opposition, D. 30, which recites in paragraph form ¶¶ 1-88 of the Def. SOF (with a few immaterial differences) as "undisputed fact" and which adds three alleged facts that are noted later in this opinion. The Court deems ¶¶ 1-88 of the Def. SOF to be admitted where Darville has not "controverted" the Hospital's statement of facts. D. Mass. L.R. 56.1.

1

employee attendance policy and requirements and understood that regular attendance was an important part of his job. D. 29 ¶¶ 4-7; D. 30 at 1-2. Under the terms of the Hospital's attendance policy, three unscheduled absences in a rolling four-month period were considered "excessive" and excessive unscheduled absences could result in disciplinary action. D. 29 ¶¶ 14-15; D. 30 at 2-3. Moreover, an employee's failure to give notice for unscheduled absences was considered "serious misconduct" and was grounds for immediate dismissal. D. 29 ¶¶ 16-17; D. 30 at 3.

In a three-month period leading up to November of 2007, Darville had seven unscheduled absences from work. D. 29 ¶ 23. In that month, Darville's supervisor met with him to discuss the need for better attendance from Darville. D. 29 ¶¶ 22-23; D. 30 at 3. During the summer of 2008, Darville did not have regular child care for his son and there were twenty-five dates between July and October of 2008 where Darville took unscheduled time off because he needed to stay home to take care of his child. D. 29 ¶¶ 26-27; D. 30 at 4. Darville's manager gave Darville a verbal warning about his attendance on October 1, 2008 and asked Darville to speak with a Human Resources employee, Angela Thomas ("Thomas"), about his attendance problems. D. 29 ¶¶ 29-30; D. 30 at 4. Thomas suggested that Darville might qualify to take FMLA leave,[2] and Darville eventually applied for and was granted FMLA leave from October 13 to November 10, 2008 to care for the mother of his child and to find childcare for his son. D. 29 ¶¶ 31-36; D. 30 at 4.

Darville alleges that Thomas contacted Darville while he was on FMLA leave and told him that "his job was in jeopardy but did not say why," Compl., D. 1 Exh. 3 ¶ 12, and that "he needed to return to work as soon as he [could]," D. 30 at 4-5. Darville believes that his FMLA

---

[2] The FMLA grants eligible employees up to twelve weeks of unpaid leave per year while affording certain job protections. 29 U.S.C. §§ 2612-2615 (2006).

leave was endangering his job security.  Compl., D. 1 Exh. 3 ¶ 12.  Darville returned to work on November 3, 2008, one week before his FMLA leave expired.  D. 29 ¶ 38; D. 30 at 5.

On November 12, 2008, Darville met with his managers regarding his attendance record and signed a memorandum indicating his willingness to abide by the Hospital's attendance policies.  D. 29 ¶¶ 42-44; D. 30 at 5.  From November 20 to November 27, 2008, Darville took a second FMLA leave apparently without incident.  D. 29 ¶¶ 39-41; D. 30 at 5.  On December 4, 2008, Darville met with his managers to discuss an incident in which Darville had recorded more time than he had worked on his timesheet.  D. 29 ¶ 45; D. 30 at 5.  In that month, December 2008, Darville also took bereavement leave without clearly communicating his bereavement leave plans to his supervisor and had two unscheduled absences.  D. 29 ¶¶ 47-50; D. 30 at 5.

Darville had a car accident on December 22, 2008 and did not return to work after that date.  D. 29 ¶¶ 51-82; D. 30 at 5-7.  Initially, Darville informed the Hospital's leave administrator that he expected to return to work on January 5, 2009.  D. 29 ¶ 56; D. 30 at 6.  Darville did not return to work on January 5, 2009 because he was still in pain and on medication.  D. 29 ¶ 57; D. 30 at 6.  After Darville did not show up to work for several days in early January, the Hospital's leave administrator contacted Darville to find out when he would be returning to work.  D. 29 ¶¶ 59-60; D. 30 at 6.  Based on those conversations and a medical certification form submitted by Darville's doctor, the Hospital extended Darville's return to work date to February 2, 2009.  D. 29 ¶¶ 61-62; D. 30 at 6.  Darville submitted a retroactive FMLA request on January 13, 2009 for the period of December 23, 2008 until February 2, 2009, and the Hospital approved this request.  D. 29 ¶¶ 63-64; D. 30 at 6.  On February 2, 2009, Darville asked to extend his leave to February 6, 2009, and the Hospital approved this request.  D. 29 ¶¶ 66-69; D. 30 at 6.  On February 10, 2009, Darville was cleared to return to work by the Hospital's

Occupational Health Services ("OHS") department to start the next day on February 11. D. 29 ¶¶ 73-78; D. 30 at 7. There is no dispute that Darville's FMLA leave had ended by February 11, 2009, and Darville himself understood that he was fully cleared to work and expected to return to work on that day. D. 29 ¶¶ 78-79; D. 30 at 7. However, Darville did not return to work on that day. D. 29 ¶ 80; D. 30 at 7.

Darville alleges that on February 11, 2009 he had a stomach virus. D. 30 at 7. He asserts that on February 10 he reported his ailment to the doctor who had certified him as being able to return to work and that doctor had told Darville to go see his regular physician. D. 30 at 7. Darville also asserts that on February 10 he told a dispatcher at the Hospital that he was going to see his doctor the next day. D. 30 at 7. The Hospital disputes these assertions but argues that they are immaterial for the resolution of this motion. D. 28 at 19 n.6. On February 12, the Hospital received a message from Darville stating that he would be out of work until the following Tuesday, February 17, 2009. D. 29 ¶ 81. On February 12, the Hospital's Director of Supply Chain Management ("Director") consulted with Darville's supervisors and the Human Resources Department and made the decision to terminate Darville. D. 29 ¶¶ 83-84; D. 30 at 8. The Director's stated reasoning for firing Darville's were his "many violations of [the Hospital's] attendance policies" and his failure to return from leave. Id.; D. 29 Exh. 14 at 2 (termination letter stating "[t]he reason for your termination is failure to return from leave"). Darville received the letter notifying him of his termination on February 13, 2009. D. 29 ¶ 85; D. 30 at 8.

More than two years later, on February 14, 2011, Darville filed his complaint against the Hospital in the Suffolk Superior Court. D. 29 ¶ 86; D. 30 at 8. The Hospital removed the case to

this Court and has now filed a motion for summary judgment. D. 1, 20, 27, 28. The Court held a hearing on the Hospital's motion on July 30, 2013. D. 41.

**III.  Analysis**

The statute of limitations for a FMLA claim is two years "after the date of the last event constituting the alleged violation" unless there has been a willful violation of 29 U.S.C. § 2615 in which case the applicable limitations is three years from that date. 29 U.S.C. § 2617(c) (2006). The Hospital argues it is entitled to summary judgment since the complaint was filed more than two years after his termination and, on this record, there has been no willful violation of Darville's FMLA rights and his claim is time-barred. The Court agrees.[3]

**A.  Standard of Review**

A party is entitled to summary judgment when there is no genuine dispute of material facts and that party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Vélez–Rivera v. Agosto–Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)) (internal quotation marks omitted). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). A fact is material if it is "one that might affect the outcome of the suit under the

---

[3] Because the Court decides that Darville's claims are barred by the statute of limitations, the Court does not reach the Hospital's second asserted basis for granting summary judgment, which is that Darville cannot establish a prima facie case of retaliation and that there is no genuine dispute of material fact that Darville was terminated from his job for "legitimate, non retaliatory and non-pretextual reasons, namely, his failure to return from leave and his persistent disregard of his employer's attendance policies and procedures." D. 27 at 1-2. See Brookins v. Staples Contract & Commercial, Inc., No. 11-11067-RWZ, 2013 WL 500874, at *5 (D. Mass. Feb 12, 2013) (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998)) (describing burden shifting framework applicable to a retaliation claim and granting summary judgment to an employer for an alleged FMLA violation).

5

governing law." Vélez–Rivera, 437 F.3d at 150 (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)) (internal quotation marks omitted).

A party that opposes summary judgment and also bears the burden of production at trial must "reliably demonstrate that specific facts sufficient to create an authentic dispute exist." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986). Although the Court "scrutinize[s] the record in the light most favorable to the summary judgment [opponent] and draw[s] all reasonable inferences therefrom to that party's behoof," Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005), the Court affords no weight to "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

### B. Darville's Claim is Barred by the FMLA Statute of Limitations

The FMLA grants an eligible employee "up to twelve weeks of unpaid leave per year . . . when that employee has 'a serious health condition that makes [him or her] unable to perform the functions of [his or her] position,' 29 U.S.C. § 2612(a)(1)(D)." Hodgens v. General Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998). The FMLA also grants eligible employees up to twelve weeks of unpaid leave per year to care for "the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise any right" provided under the FMLA. See 29 U.S.C. § 2615(a)(1). In addition, employers cannot discharge or in any manner discriminate against employees for asserting FMLA rights. See 29 U.S.C. § 2615(a)(2).

Any person aggrieved by a violation of the FMLA generally must bring his or her claim within a two-year statute of limitations window that runs from "the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Here, Darville initiated his lawsuit just outside of the two-year window on February 14, 2011; D. 1 Exh. 10 at 4, where the "last event constituting the alleged violation" was his termination that occurred on February 12, 2009, for which he alleges he received notice on February 13, 2009. D. 29 ¶ 85; D. 30 at 8.[4] If the two-year statute of limitations applies, the Court must grant summary judgment for the Hospital on that ground.

However, "[i]n the case of such action brought for a <u>willful</u> violation of [the FMLA], such action may be brought within [three] years of the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(2) (emphasis added). The FMLA does not define the term "willful" but in <u>Hillstrom v. Best Western TLC Hotel</u>, 354 F.3d 27, 33 (1st Cir. 2003), the First Circuit held "that in order to establish a willful violation of the FMLA, a plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" <u>Id.</u> (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)). In adopting this definition, the First Circuit expressly rejected two other tests for determining willfulness: a "test that ask[s] only whether the employer knew the Act 'was in the picture,' <u>Coleman v. Jiffy June Farms, Inc.</u>, 458 F.2d 1139, 1142 (5th Cir. 1972), and another test that ask[s] if the employer acted unreasonably in believing it was complying with the statute. <u>McLaughlin</u>, 486 U.S. at 134." <u>Hillstrom</u>, 354 F.3d at 33.

---

[4] Darville does not argue that his action arises within the two-year statute of limitations and instead "alleges a willful violation [that] 'may be brought within three years of . . . the alleged violation . . . .'" D. 30 at 9 (quoting 29 U.S.C. § 2617(c)(2)); <u>see also</u> Compl., D. 1 Exh. 3 ¶ 40 (alleging the Hospital's "violation of the FMLA was willful").

7

Here, Darville brings forward no evidence to create a genuine dispute of material fact that the Hospital "knew . . . [that] its conduct was prohibited by the statute." Hillstrom, 354 F.3d at 33. Darville suggests that the Court should find such knowledge where a Hospital employee allegedly telephoned Darville when he was on an approved FMLA leave and told him that "his job was in jeopardy and that he needed to return to work as soon as he [could]." D. 30 at 4-5 (quoting Dep. of Darville; D. 30 at 15-16), 9 (alleging that the Hospital "intentionally disobeyed the law") (emphasis added)). But, as Darville alleges in his complaint, it was Darville and not the Hospital who linked the alleged warning to Darville's FMLA leave. See Compl., D. 1 Exh. 3 ¶ 12 (alleging that "Thomas told Darville that his job was in jeopardy but did not say why [and] Darville therefore feared that his FMLA leave was endangering his job security"). Assuming without deciding that this comment would constitute interference under the FMLA, there is no evidence that the Hospital knowingly violated the FMLA statute.

Nor is there evidence to create a genuine dispute of material fact that the Hospital acted recklessly in allegedly not complying with its legal obligations. As the First Circuit stated, quoting the Supreme Court, "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful.]" Hillstrom, 354 F.3d at 33 (quoting McLaughlin, 486 U.S. at 135 n.13). The Court readily admits that the distinction between unreasonableness and recklessness could be hard to identify in certain cases; but here Darville does not present any evidence to raise a genuine dispute of material fact as to the "scienter" of Thomas or the Hospital, which is a required showing to fall within the three-year statute of limitations. Darville's own deposition testimony does not raise a genuine dispute of material fact that the Hospital's alleged wrongdoing was willful where his testimony does not indicate any connection between Thomas's alleged communication and Darville's FMLA leave

8

(let alone a reckless violation of FMLA law) and there is no other evidence in the record to support Darville's allegation of same.

Darville also alleges that "[b]y terminating Darville's employment the day after he was scheduled to return to work from his employer-approved FMLA leave, [the Hospital] showed reckless disregard for the legal protections afforded to Darville under the statute." D. 30 at 10. Darville does not offer more than this conclusory assertion as to why the Hospital's behavior would be willful under 29 U.S.C. § 2617(c)(2). Darville was not on FMLA leave at the time he was terminated and the Hospital Director who fired Darville had received notice that Darville had been cleared to return to work the day before but Darville did not appear for work.[5]

Although Darville alleges that Darville told the same doctor who cleared him for work that he was suffering from a stomach ailment, that disputed fact is immaterial: the undisputed facts on this record are that after having being cleared to return to work and knowing that he was supposed to return to work, Darville did not do so; that Darville had a long history of unexcused absences from work outside of his FMLA leave time; and that the Hospital had repeatedly disciplined Darville for these unexcused absences. See Def. SOF D. 29 ¶¶ 22-29 & Exh. 7 (showing 25 unscheduled absences in July through September 2008, 7 absences in late 2007, and several "counseling sessions" "verbal warning[s] about his attendance" and written memoranda, which warned of "further disciplinary actions" for further "failure to meet the performance expectations" required of his job). Darville acknowledges that he had received training on the

---

[5] Although the Court is focusing on whether there may have been a willful FMLA violation, even when considering non-willful FMLA violations the First Circuit has noted that "the circumstantial fact of temporal proximity [can be] weakened considerably by [a] history of . . . poor work performance." Hodgens, 144 F.3d at 171 (affirming grant of summary judgment for employer on FMLA claim); see also Brookins, 2013 WL 500874, at *6 (finding the temporal proximity between an employee's request for FMLA leave and the employee's termination did not show retaliation where the employee had prior unexcused absences).

9

Hospital's employee attendance policy and requirements and understood that regular attendance was an important part of his job. D. 29 ¶¶ 4-7; D. 30 at 2. Moreover, he was counseled as to his attendance problems at least on four occasions in November 2007, October 2008, November 2008 and December 2008. D. 29 ¶¶ 22-23, 29-31, 42-45. Finally, it was the Hospital that suggested that Darville take FMLA in the first place, before approving three requests for FMLA leave request and granting at least one extension. D. 29 ¶¶ 34-36, 39-41, 63-69. Darville has not pointed to any evidence to raise a genuine dispute of material fact that the Hospital acted willfully with respect to any alleged violation of the FMLA and thus his claim is barred by the two-year statute of limitations.

## IV.   Conclusion

For the reasons stated above, The Court GRANTS the Hospital's motion for summary judgment, D. 27.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge